**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

SULE BEST, in his individual capacity       :
and as the administrator of the estate of   :
Sonja Angela Todman and                      :
the father of Nia Best, et al.,              :
                                             :      CIVIL ACTION NO.
                   Plaintiffs,               :      1:05-CV-1119-JOF
                                             :
        v.                                   :
                                             :
COBB COUNTY, GEORGIA, et al.,                :
                                             :
                   Defendants.               :

**<u>OPINION AND ORDER</u>**

This matter is before the court on Defendants' motion for summary judgment [40-1] and Defendants' motion to exceed page limits [61-1].

**I.      Background**

        **A.      Procedural History and Facts**

Plaintiffs, Sule Best, Dexter Todman, Marcia Tate, and Nia Best, filed suit against Defendants Cobb County and former Cobb County Police Chief Lee New, on April 27, 2005, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their rights under the substantive due process clause of the Fourteenth Amendment and the right to interstate travel by failing to train Cobb County Police Department officers on proper police pursuit

procedures.  Chief New was the Chief of the Cobb County Police Department from January 1, 1997, through December 31, 2004.

On April 27, 2003, Sonya Todman, Marcia Tate, and Nia Best were driving in Cobb County when their vehicle was struck by a car fleeing from Cobb County authorities and pursued by Cobb County officer C.K. Smith.  Sonya Todman was killed in the accident, and Marcia Tate and Nia Best were seriously injured.

Immediately prior to the accident, Officer Smith had pulled over the suspect's vehicle because the license tag was improperly affixed and was hanging down about to fall off.  No party disputes that Officer Smith had probable cause to pull over the vehicle for a violation of O.C.G.A. § 40-2-41 which prescribes the manner in which license tags must be attached. Officer Smith also suspected the car might be stolen because he saw that there was a metal plate riveted over the trunk lock.  After initiating the traffic stop, Officer Smith began to approach the vehicle on foot when the suspect's car sped off.  Officer Smith initiated a pursuit.  Sergeant May, Smith's supervisor, heard the call over the radio and understood that Smith had initiated a pursuit.  The pursuit – which lasted approximately 30 seconds and ran just under one mile – took place on a Sunday at 5:28 p.m. on a four-lane highway with light to moderate traffic.

Officer Smith estimated that the suspect's car reached speeds of 80 miles per hour, weaving in and out of traffic.  The suspect's vehicle then crossed the centerline of the highway, running into the oncoming lane of traffic and colliding head-on with Plaintiffs' vehicle.

2

One of Cobb County Police Department's Standard Operating Procedures is Policy 5.03 regarding "Vehicle Pursuits." Cobb County maintains records on police pursuits. Pursuits are reviewed by the Cobb County supervisor and precinct commander, and a statistical report is compiled after every pursuit.

Plaintiffs' expert testified that 87.5% of all pursuits in Cobb County arise out of misdemeanor offenses or traffic violations.[1] He further testified that out of more than 650 pursuit incidents, only 11 resulted in the Cobb County officer terminating the pursuit. Furthermore, he stated that Cobb County officers are not required to balance the need to apprehend a suspect against the public's safety, and no action is taken against them for policy violations during pursuits. His review of the 650 pursuits in Cobb County showed that 380 (58%) resulted in accidents with 93 (14%) resulting in injuries and at least 4 fatalities.

Peace Officers Standards Training (P.O.S.T.) does not require any training on police pursuits. Officer Smith is P.O.S.T.-certified and did receive training in vehicle pursuits through his employment with Cobb County. He also received a day of training in the operation of a vehicle. Sergeant John Sullivan instructed Officer Smith in "Mandate Training" which included a full day of instruction on Cobb County's then-current vehicle pursuit policy, as well as covering the decision of whether or not to initiate a pursuit.

_____

[1]Plaintiffs presented the expert testimony Michael E. Tata, and Defendants presented the expert testimony of Ken Katsaris. No party has filed a *Daubert* challenge.

3

In 2001, a Cobb County grand jury recommended that Cobb County's vehicle pursuit policy be rewritten to contain a top priority for the safety of the public and the police officer. In light of this recommendation, the grand jury also stated that if the identity of the suspect is known through a license tag, as an example, and the suspect is not a dangerous felon, then the pursuit should be discontinued.  The grand jury also recommended that the county procure the use of a helicopter to assist in pursuits.  These recommendations were not adopted by Cobb County.

## B.    Contentions

Plaintiffs clarify in their response to Defendants' motion for summary judgment that they are not asserting any state law claims against Defendants.  Further, Plaintiffs concede that Defendant New is entitled to qualified immunity on their constitutional "right to travel" claim. Finally, Plaintiffs do not assert that the Cobb County pursuit policy is unconstitutional on its face.

With respect to Plaintiffs' remaining claims of failure to train, Defendants assert that a municipality cannot be held liable under section 1983 if there was no constitutional deprivation by any of its officers.  In the alternative, Defendants contend that even if Plaintiffs could assert that the policy-making process with respect to police pursuit was deliberately indifferent, Plaintiffs cannot show that this deficient policy caused Plaintiffs' injuries for two reasons:  (1) Officer Smith, who was conduit of Defendants' policies, did not constitutionally injure Plaintiffs; and (2) beyond the constitutionality argument, Officer Smith's actions were

4

not the proximate cause of Plaintiffs' injuries because the driving of the fleeing suspect broke the chain of causation.

Plaintiffs concede that while some cases do hold that there can be no municipal liability without a constitutional deprivation by its officers, there is a split in the circuits on this issue. Plaintiffs contend that Cobb County was deliberately indifferent in training its officers on the pursuit policy because none of the officers who engaged in police pursuits was given corrective training when citizens were injured or killed during those pursuits. Further, Plaintiffs argue that the Cobb County policy gives insufficient guidance on whether to initiate a pursuit or not. Plaintiffs aver that Chief New should have rewritten the pursuit policy in light of the 2001 grand jury recommendations to limit pursuits to situations where the need to apprehend the suspect justified risking the lives of innocent motorists and pedestrians.

**II.    Discussion**

Plaintiffs do not allege in their complaint – or otherwise argue in their briefing – that Officer Smith committed a constitutional tort against them during the police pursuit. The court must decide then whether Cobb County can be held liable to Plaintiffs where there is no constitutional violation by the officer involved in the pursuit. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) ("proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation and (2) if so, whether the city is responsible for that violation").

5

Authority from several Supreme Court cases is relevant to Plaintiffs' claims here.   In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Court set forth the standard for determining whether a constitutional violation occurred in an officer pursuit case.   There, a police officer engaged in a high speed pursuit of a speeding motorcycle driver.   The motorcycle passenger was killed when the bike tipped over and the officer struck the passenger.   The Court determined that the case arose under the Fourteenth Amendment's guarantee of substantive due process and held that in such a challenge, "the threshold question is whether the behavior of the governmental officer is so egregious that it may fairly be said to shock the contemporary conscience."   *Id.* at 846-48 & n.8.   *Lewis* addressed only the officer's liability and did not discuss municipal liability.

In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), the Supreme Court set out the manner in which a plaintiff could establish liability against a municipal defendant for lack of training.   There, the plaintiff sued the deputy sheriff and the county alleging that she was injured when the deputy sheriff used excessive force to remove her from the passenger side of a stopped vehicle.   The Court held that

> the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.   That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404.   Thus, the Eleventh Circuit has held that to "impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the

6

municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).

The Eleventh Circuit has touched upon, but not squarely addressed, whether there can be municipal liability where there is no constitutional deprivation by one of the municipality's officers. In *Cannon v. Taylor*, 782 F.2d 947 (11th Cir. 1986), the plaintiff was killed when a police car struck her vehicle. The police officer was responding to a disturbance call at a pool hall and was traveling at approximately 40 miles per hour but was not using his lights and siren. The court determined that the officer was merely negligent, and therefore the plaintiff did not have a cause of action against him under section 1983.

The plaintiff also raised a due process claim against the city contending that it failed to train its officers in the operation of police vehicles. The court found that "the most the jury could have found had the case gone to trial was that City officials in policymaking positions took no affirmative measures to respond to certain instances of violation" of the policy. *Id.* at 950. "The testimony does not show the officials ever authorized officers to violate the law." *Id.* "To say that officials took no action to correct certain violations of state law is far from saying that those officials were deliberately indifferent or grossly negligent in respecting citizens' rights or tacitly authorized constitutionally offensive conduct." *Id.* "Nor is the evidence sufficient to establish an actionable policy of inadequate training in the

7

operation of police vehicles in excess of the speed limit.   It is clear from this Court's precedents that at least a showing of gross negligence will be necessary to establish liability for inadequate training."   *Id.* (noting that the officer "received the standard police academy training on operating his vehicle").   Thus, the *Cannon* court analyzed the merits of the question of municipal liability after having determined that the officer did not commit a constitutional violation.   The court, however, did not discuss its reasons for proceeding to municipal liability under these circumstances.

Several months after *Cannon* was decided, the Supreme Court issued its opinion in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam).   There, a plaintiff filed suit against two police officers, the city, and members of the city police commission contending that he had been subject to arrest without probable cause and was the victim of excessive force in making the arrest.   One of the officers was granted summary judgment at the pre-trial stage, while the second officer was acquitted by the jury.   Thereafter, the district court dismissed the action against the city and the members of the police commission.   The Ninth Circuit reversed the district court's dismissal of the city, holding that the jury could have believed that the officer was simply following police regulations and was entitled to a good faith defense. Such a defense did not preclude the existence of a constitutional injury.   *See id.* at 797-98.

The Supreme Court disagreed.   In reversing the Ninth Circuit, the Court held that the city and the members of the police commission were "sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury

8

on respondent, it is inconceivable" that the city and the police commission could be liable to

the plaintiff. *Id.* at 799.  Further, the court stated that none of its

> cases authorizes the award of damages against a municipal corporation based
> on the actions of one of its officers when in fact the jury has concluded that the
> officer inflicted no constitutional harm.  If a person has suffered no
> constitutional injury at the hands of the individual police officer, the fact that
> the departmental regulations might have *authorized* the use of constitutionally
> excessive force is quite beside the point.

*Id.*

The Eleventh Circuit applied this intervening Supreme Court authority in *Rooney v.*

*Watson*, 101 F.3d 1378 (11th Cir. 1996).   There, the plaintiffs were injured when a police

cruiser traveling at speeds of 73 miles per hour struck their car.   The police officer was not

engaged in a pursuit or responding to an emergency call, and he did not have his lights and

sirens on.   The plaintiffs asserted that the county had a de facto policy that encouraged

indiscriminate speeding and grossly negligent driving.

The court first held that the officer's conduct, while negligent or grossly negligent, did

not rise to a constitutional deprivation based on *Cannon*'s precedent.   Significant to the

court's purposes here, with respect to the county's liability, the court held that "an inquiry into

a governmental entity's custom or policy is relevant only when a constitutional deprivation

has occurred." *Id.* at 1381.  "Since we have determined that Deputy Watson's conduct did not

cause the Rooneys to suffer a constitutional deprivation, we need not inquire into Volusia

County's policy and custom relating to patrol vehicle operation and training."   *Id*. (citing *Los*

*Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")). The court specifically held that the "failure to train" claim could not exist independent of a constitutional violation by the deputy.   *See id.* at 1381 n.2 ("The Rooneys also allege that Volusia County's failure to train officers for high speed vehicle operation leads to a cognizable cause of action under section 1983.   The Rooneys cannot maintain this cause of action, however, because the automobile accident did not rise to a level of violating their constitutional rights.).   *See also Sanders v. City of Union Springs*, 2006 WL 3307446 (11th Cir. Nov. 15, 2006) (unpublished decision) (police pursuit case holding that when officer committed no constitutional violation court would not address municipality's custom or policy because "we will only inquire into a governmental entity's custom or policy when a constitutional deprivation has occurred," citing *Rooney* and not *Cannon*).   Other circuits have reached the same conclusion.   *See, e.g., Trigalet v. City of Tulsa*, 239 F.3d 1150 (10th Cir. 2001); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (conclusion that no officer-defendant deprived plaintiff of any constitutional right a fortiorari defeats claim against county); *S.P. v. City of Takoma Park*, 134 F.3d 260, 272 (4th Cir. 1998) (assuming training of officers was unconstitutional, city could not be held liable where no constitutional violation by officers had occurred); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596-97 (7th Cir. 1998) (where officers did not violate constitution in seizing plaintiff's

10

decedent, neither city nor police chief could be held liable); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (since officers did not violate plaintiff's rights, it follows that claim against city under theory of custom also fails); *Scott v. Heinrich*, 39 F.3d 912, 916 (9th Cir. 1994) (although liability of municipalities does not turn on liability of individual officers, "it is contingent on a violation of constitutional rights"; where no constitutional violation occurred, municipality could not be held liable)).  *But see Fagan v. City of Vineland*, 22 F.3d 1283, 1291-92 (3d Cir. 1994) (rejecting argument that *Heller* "automatically precluded municipal liability absent an individual police officer's liability").

Although *Cannon* is the earlier panel opinion, the intervening Supreme Court authority of *City of Los Angeles v. Heller* and the *Rooney* court's reliance on that precedent makes *Rooney* binding on this court.  For that reason, the court holds that Cobb County cannot be held liable where the plaintiffs did not suffer a constitutional tort at the hands of Officer Smith.

In the alternative,  even if the court were to determine that municipal liability was a possibility, Plaintiffs, here, have not demonstrated liability in the manner required by *Brown*. Plaintiffs have proffered no evidence to show that the allegedly deliberately indifferent manner in which Cobb County or Chief New trained the officers on pursuit was the "moving force" or "direct causal link" to the injuries they sustained after a 30-second pursuit lasting less than one mile.

11

Furthermore, regardless of whether one agrees with the rule set forth by the *Trigalet* court concerning the underlying derivative constitutional claim, that court also held that the actions of the city did not meet the requisite level of indifference under *Brown*. The training provided by the City in *Trigalet* was far less substantial than that provided by Cobb County here.[2]   For these reasons, the court GRANTS Defendants' motion for summary judgment as to both Cobb County and Chief New.

### III.   Conclusion

The court GRANTS Defendants' motion for summary judgment [40-1] and GRANTS Defendants' motion to exceed page limits [61-1].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiffs' complaint.

**IT IS SO ORDERED** this 2nd day of February 2007

            s/ J. Owen Forrester
            J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

---

[2]The same analysis would apply to Plaintiffs' interstate travel claim.  The federal guarantee of interstate travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489 (1999).  Plaintiffs do not even offer an argument as to how an intrastate police pursuit implicates these protections or how Officer Smith might have injured their constitutional right to travel.  As such, there can be no municipal liability.

12